UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RITA'S WATER ICE FRANCHISE COMPANY, LLC, | : | CIVIL ACTION NO. _____ |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SA SMITH ENTERPRISES, LLC, SHIRLEY A. SMITH, and JEFFREY B. SMITH | : | |
| | : | |
| Defendants. | : | |

## TEMPORARY RESTRAINING ORDER

This _____ day of August, 2010, upon consideration of Plaintiff Rita's Water Ice Franchise Company, LLC's Emergency Motion for Temporary Restraining Order, together with the accompanying memorandum of law and verified complaint, it is hereby **ORDERED** that the Motion is **GRANTED**.

The Court hereby finds that as a direct and proximate result of the alleged conduct complained of in the Emergency Motion for Temporary Restraining Order and Preliminary Injunction and the verified Complaint, plaintiff Rita's Water Ice Franchise Company, LLC ("Rita's") is suffering and will continue to suffer immediate and irreparable harm in the form of an unfair competitive disadvantage and loss of goodwill within the Franchisee Territory and the surrounding area, and the unauthorized retention and use of its valuable confidential information and proprietary information. Precedent establishes that the harm alleged constitutes irreparable harm because Rita's ability to establish a new franchise in the affected geographic area is immeasurably impaired by the unauthorized use of its confidential information and proprietary

information and the disturbance to Rita's customer relationships is unascertainable.  Such harm

is not capable of being fully compensated by money damages.  This Court also take note of

Rita's assertion under section 17.8 of the Franchise Agreement that the defendants

acknowledged and agreed that their violation of the non-competition covenants of the Franchise

Agreement would result an irreparable injury to Rita's for which no adequate remedy at law may

be available.

This Temporary Restraining Order is issued without notice to the defendants

pursuant to Fed. R. Civ. Pro. 65(b) because this Court finds that Rita's has asserted sufficient

facts in the verified complaint clearly showing that immediate and irreparable injury, loss or

damage will result to Rita's before the defendants can be heard, and Rita's attorney has certified

in writing in the form of a Declaration submitted in support of the Emergency Motion for

Temporary Restraining Order the efforts that Rita's attorney has made to give notice and the

reasons why notice should not be required.

Therefore, it is hereby **ORDERED** that Defendants SA Smith Enterprises, LLC,

Jeffrey B. Smith and Shirley A. Smith, and all of their officers, stockholders, owners, directors,

agents, representatives, servants and employees, and all those acting in concert or privity

therewith ("Defendants") are immediately enjoined from operation of the Pearly's Sweet

Creative Desserts at 2080 Timothy Road, Athens, Georgia 30606.  In furtherance thereof,

Defendants are **ORDERED** to immediately cease and desist all operations, including sales,

offers of sale, marketing and advertising associated with or undertaken in furtherance of the

operation of Pearly's Sweet Creative Desserts at 2080 Timothy Road, Athens, Georgia 30606.

A hearing on Plaintiff's Motion for Preliminary Injunction is hereby scheduled for

_____, 2010 at ____ a.m./p.m. in courtroom ____.   This Temporary Restraining Order shall

remain in force until the conclusion of that hearing.

Plaintiff is hereby ordered to deposit with the Clerk a bond (or equivalent

security) in the amount of $_____.

_____
                                                                    U.S.D.J.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RITA'S WATER ICE FRANCHISE COMPANY, LLC, | : | CIVIL ACTION NO. _____ |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SA SMITH ENTERPRISES, LLC, | : | |
| SHIRLEY A. SMITH, and | : | |
| JEFFREY B. SMITH | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER FOR PRELIMINARY INJUNCTION

This _____ day of _____, 2010, upon consideration of Plaintiff Rita's Water Ice Franchise Company, LLC's Motion for Preliminary Injunction, together with the accompanying memorandum of law and verified complaint, it is hereby **ORDERED** that the Motion is **GRANTED**.

It is **ORDERED** that Defendants SA Smith Enterprises, LLC, Jeffrey B. Smith and Shirley A. Smith, and all of their officers, stockholders, owners, directors, agents, representatives, servants and employees, and all those acting in concert or privity therewith ("Defendants") are hereby immediately enjoined from operation of the Pearly's Sweet Creative Desserts at 2080 Timothy Road, Athens, Georgia 30606, which includes all operations, including sales, offers of sale, marketing and advertising associated with or undertaken in furtherance of the operation of Pearly's Sweet Creative Desserts.

It is further **ORDERED** that Defendants are immediately enjoined from operation of any business as defined by paragraph 17.3 of the Franchise Agreement at any location within

the Franchisee's Territory, within three miles of the Franchise's Territory, and within three miles of any Rita's shop.  Defendants are further **ORDERED** to do the following within ten days of this Order:

A.     Deliver to Rita's the Confidential Operating Manual, as defined by the section 3.6 of the Franchise Agreement, together with all copies, summaries, and extracts from it, and all other records, correspondence, newsletters, advertising layouts and instructions containing Confidential Information, as defined by section 10 of the Franchise Agreement, and Proprietary Marks as defined on page one (1) of the Franchise Agreement;

B.     Change and assign to Rita's the telephone number(s) and telephone listing(s) at the address known as 2080 Timothy Road, Athens, Georgia 30606;

C.     Deliver to Rita's the "dasher" and "door" of each of the Rita's batch machine(s) that are currently in Defendants' possession, in exchange for which Rita's will pay to defendants upon delivery the sum of $100 for each batch machine; and

D.     Surrender for pick up by Rita's the Rita's Cart, in exchange for which Rita's will pay defendants the value as determined by section 16.9 of the Franchise Agreement.

This Preliminary Injunction shall remain in force until the conclusion of these proceedings or until further superseding Order of this Court.

Plaintiff is hereby ordered to deposit with the Clerk a bond (or equivalent security) in the amount of $_____.

_____
                                    U.S.D.J.

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RITA'S WATER ICE FRANCHISE COMPANY, LLC, | : | CIVIL ACTION NO. _____ |
| Plaintiff, | : | |
| v. | : | |
| SA SMITH ENTERPRISES, LLC, SHIRLEY A. SMITH, and JEFFREY B. SMITH | : | |
| Defendants. | : | |

## EMERGENCY MOTION FOR TEMPORARY RESTRAINING
## ORDER AND PRELIMINARY INJUNCTION

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, plaintiff Rita's Water

Ice Franchise Company, LLC ("Rita's"), by and through its undersigned counsel, moves this

Court for a Temporary Restraining Order as follows:

A.     Finding that as a direct and proximate result of the conduct complained of in the

Emergency Motion for Temporary Restraining Order and Preliminary Injunction and the verified

Complaint, Rita's is suffering and will continue to suffer immediate and irreparable harm that is

not capable of being fully compensated by money damages;

B.     Entering the Temporary Restraining Order without notice to the defendants

pursuant to Fed. R. Civ. Pro. 65(b) because Rita's has asserted sufficient facts in the verified

complaint clearly showing that immediate and irreparable injury, loss or damage will result to

Rita's before the defendants can be heard, and the undersigned counsel has certified in writing

the efforts that Rita's attorney has made to give notice and the reasons why notice should not be required; and

    C.     Temporarily enjoining and restraining defendants and all of their officers, stockholders, owners, directors, agents, representatives, servants and employees, and all those acting in concert or privity therewith ("Defendants") from operation of the Pearly's Sweet Creative Desserts at 2080 Timothy Road, Athens, Georgia 30606 and ordering the defendants to immediately cease and desist all operations, sales, offers of sale, marketing and advertising associated with or undertaken in furtherance of the operation of Pearly's Sweet Creative Desserts at 2080 Timothy Road, Athens, Georgia 30606.

    Rita's further moves this court for a Preliminary Injunction as follows:

    A.     Preliminarily enjoining and restraining Defendants SA Smith Enterprises, LLC, Jeffrey B. Smith and Shirley A. Smith, and all of their officers, stockholders, owners, directors, agents, representatives, servants and employees, and all those acting in concert or privity therewith ("Defendants") from operation of the Pearly's Sweet Creative Desserts at 2080 Timothy Road, Athens, Georgia 30606, which includes all operations, sales, offers of sale, marketing and advertising associated with or undertaken in furtherance of the operation of Pearly's Sweet Creative Desserts;

    B.     Preliminarily enjoining and restraining Defendants from operation of any business as defined by paragraph 17.3 of the Franchise Agreement at any location within the Franchisee's Territory, within three miles of the Franchise's Territory, and within three miles of any Rita's shop; and

C.     Compelling Defendants within 10 days of the entry of the Preliminary Injunction as follows:

1.     Deliver to Rita's the Confidential Operating Manual, as defined by the section 3.6 of the Franchise Agreement, together with all copies, summaries, and extracts from it, and all other records, correspondence, newsletters, advertising layouts and instructions containing Confidential Information, as defined by section 10 of the Franchise Agreement, and Proprietary Marks as defined on page one (1) of the Franchise Agreement;

2.     Change and assign to Rita's the telephone number(s) and telephone listing(s) at the address known as 2080 Timothy Road, Athens, Georgia 30606;

3.     Deliver to Rita's the "dasher" and "door" of each of the Rita's batch machine(s) that are currently in Defendants' possession, in exchange for which Rita's will pay to defendants upon delivery the sum of $100 for each batch machine; and

4.     Surrender for pick up by Rita's the Rita's Cart, in exchange for which Rita's will pay defendants the value as determined by section 16.9 of the Franchise Agreement.

In support of this Emergency Motion for Temporary Restraining Order and Preliminary Injunction, Rita's relies upon the accompanying Memorandum of Law and the verified Complaint filed in this action. Plaintiffs request that this Court enter a Temporary Restraining Order and an Order for Preliminary Injunction substantially in the form of the proposed orders attached hereto.

Respectfully submitted,

/s/ Erin L. Ginsberg
Erin L. Ginsberg (I.D. No. 89864)
eginsberg@schnader.com
**SCHNADER HARRISON SEGAL & LEWIS LLP**
1600 Market St., Ste. 3600
Philadelphia, PA 19103
T: (215) 751-2000
*Attorneys for Plaintiffs*

Dated: August 24, 2010

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| RITA'S WATER ICE FRANCHISE COMPANY, LLC, | : | CIVIL ACTION NO. _____ |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| SA SMITH ENTERPRISES, LLC, SHIRLEY A. SMITH, and JEFFREY B. SMITH | : |  |
|  | : |  |
| Defendants. | : |  |
|  | : |  |

---

## MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

---

Erin L. Ginsberg (I.D. No. 89864)
eginsberg@schnader.com
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market St., Ste. 3600
Philadelphia, PA 19103
T: (215) 751-2000

*Attorney for Plaintiffs*

Dated: August 24, 2010

## I.    INTRODUCTION

Plaintiff, Rita's Water Ice Franchise Company, LLC ("Rita's") is a nationally-recognized franchisor of stores that are engaged in the business of selling a variety of dessert and snack treats to customers, including Italian water ice, frozen custard, gelati, Misto shakes, and soft pretzels, among other food products.  This action is necessitated by the defendants' intentional and ongoing breach of their franchise agreement with Rita's, by which defendants were extended the privilege of operating a Rita's franchise store located at 2080 Timothy Road, Athens, Georgia 30606 ("the Athens Store") for a minimum term of ten (10) years.

Without notice to, or the consent of, Rita's, defendants prematurely ceased operations of their Rita's franchise seven years prior to the expiration of the  term for which they agreed to operate the franchise, prompting Rita's to terminate the Franchise Agreement.  Shortly thereafter, defendants began operating a competitive business at the same location called Pearly's Sweet Creative Desserts (the "Pearly's Store").  In the course of operating this competitive business, defendants have been and continue to sell competitive food products, including frozen dessert treats such as water ice, gelato and ice cream.

The parties' franchise agreement contains limited and reasonable restrictive and non-competition covenants that are designed to prevent the unfair use of Rita's confidential and proprietary information that Rita's discloses to its franchisees for their use in the operation of a Rita's franchise.  Specifically, defendants covenanted that following termination of the Franchise Agreement, for a period of two years they would not engage in any retail business that is the same or substantially similar to a Rita's shop or offer to sell any products that are the same or substantially similar to any of Rita's products at the Athens Store, within the Franchisee's Territory (defined as a 2.5 mile radius around the Athens Store), and within three miles of the

Franchisee's Territory. Defendants' operation of a competitive business at the Athens Store immediately following termination of the Franchise Agreement constitutes a direct violation of the foregoing covenant. Defendants have also failed and refused to comply with other post-termination covenants relating to deidentifying the store as a Rita's franchise, returning Rita's confidential documents and ceasing use of confidential information, and returning certain equipment to Rita's.

The post-termination covenants are intended to prevent Rita's competitors from gaining an unfair advantage and to maintain Rita's goodwill in the market and in the community where its franchises are located. Defendants' operation of a business that is in direct competition with Rita's and which utilizes Rita's proprietary and confidential information is a knowing, intentional and ongoing breach of those covenants to which defendants agreed to be bound. Defendants' conduct is causing irreparable harms to Rita's goodwill and places Rita's at a unfair competitive disadvantage, which precedent establishes is a protectable interest and rightly the subject of emergency injunctive relief.

Accordingly, Rita's seeks to enjoin defendants from further willful breach of the franchise agreement's restrictive covenants and their use of Rita's proprietary and confidential information. Indeed, the defendants *consented* to the issuance of an injunction prohibiting any conduct in violation of the terms of the Non-Compete Clause and have no grounds upon which to oppose this request. *See* the plaintiff's verified Complaint at ¶ 36, and Exhibit A to the Complaint, the Franchise Agreement at ¶ 17.8 (hereinafter "Compl.").

PHDATA 3320732_1

## II.   STATEMENT OF FACTS

### A.   The Franchise Agreement

On or about July 19, 2007, Rita's and defendants Jeffrey and Shirley Smith entered into an agreement entitled "Rita's Water Ice Franchise LLC Franchise Agreement" (the "Franchise Agreement"). (Compl, ¶ 13)  On July 29, 2007, with the consent of Rita's and pursuant to the terms and conditions of transfer under the Franchise Agreement, the Smiths transferred the Franchise Agreement to defendant SA Smith. (*Id.,* ¶ 14)   Shirley Smith is a 90% shareholder in SA Smith and Jeffrey Smith is a 10% shareholder in SA Smith. (*Id.,* ¶ 15)  The Franchise Transfer Agreement authorizes the Defendants to transfer the Franchise Agreement to SA Smith and to operate the Rita's Store through SA Smith. (*Id.,* ¶ 16)  The Franchise Transfer Agreement provided that the Defendants shall not be relieved of their personal obligations under the Franchise Agreement being transferred. (*Id.,* ¶ 17)

As a part of granting the right to operate a Rita's franchise, Rita's discloses proprietary and confidential information pertaining to the unique and distinct format relating to the establishment and operation of Rita's shops (the "System"). (*Id.,* ¶ 18)  Such information includes but is not limited to: Rita's mixes, ingredients, formulae, recipes and methods of preparation of certain food products; and methods, techniques, formats, specifications, systems, procedures, and methods of business practices and management, sales and promotional techniques, and knowledge of, and experience in, the operation of the Franchised Business (the "Confidential Information"). (*Id.*)  Rita's identifies the System by means of certain trade names, service marks, trademarks, trade dress, logos, emblems, and indicia of origin for use in connection with the System (the "Proprietary Marks"). (*Id.,* ¶ 19)  Rita's granted to defendants and they in turn undertook the obligation of "the right and franchise ... to establish and operate a

Rita's shop" at the Athens Store location (the "Franchised Business") and the right to use in the operation of the Rita's Shop the Proprietary Marks and the System. (*Id.*, ¶ 20)

The defendants acknowledged and agreed that by virtue of Rita's disclosure of the Confidential Information in furtherance of the Franchise Agreement, the defendants did not acquire any interest in the Confidential Information other than the right to utilize it in the course of operating the Franchised Business and that the use or duplication of the Confidential Information for any use outside the System would constitute an unfair method of competition. (*Id.*, ¶ 21) The defendants also acknowledged and agreed that the Confidential Information is proprietary, involves Rita's trade secrets, and was disclosed to the defendants solely on the condition that they agreed as follows: (1) to not use the Confidential Information in any other business or capacity during and after the term of the Franchise Agreement; (2) to maintain the absolute confidentiality of the Confidential Information during and after the term of the Franchise Agreement; (3) to not make unauthorized copies of any portion of the Confidential Information and maintain restrictions on disclosure thereof to employees of the Franchise Business by reasonable methods; and (4) to not disclose or permit access to any Confidential Information by any person, except for employees of the Franchisee Business requiring such access for the defendants to fulfill their obligations under the Franchise Agreement. (*Id.*, ¶ 22)

In addition to supplying and disclosing the Confidential Information and Proprietary Marks, pursuant to the Franchise Agreement Rita's performed a variety obligations to the defendants and provided to the defendants a variety of items intended to aid the defendants in the operation of the Franchised Business, including:

    a.  Rita's standard plans and specifications for a prototypical Rita's shop, including exterior and interior design and layout, fixtures, furnishings, and signs;

    b.  Initial training prior to opening the Rita's Shop, and continued training from time to time over the term of the Franchise Agreement;

    c.  Pre-opening assistance and supervision;

    d.  Advertising and promotional material, including newspaper mat, coupons, point-of-purchase materials, special promotions, direct mail materials, and similar advertising and promotional materials;

    e.  Rita's Confidential Operating Manual (the "Manual") for use during the term of the Franchise Agreement only; and

    f.  Ongoing advise and written materials concerning techniques of managing and operating the Rita's Shop, including, but not limited to, required and suggested inventory and sales methods, new developments and improvements in Franchised Business layout and design, and new developments in products and marketing techniques.

*(Id.,* ¶ 23)

       In exchange for the right to operate the Rita's franchise, the Defendants agreed to pay Rita's a continuing royalty fee determined by multiplying six and one-half percent (6.5%) times the Rita's estimate of the amount of gross sales to be derived by Franchised Business from the retail sale of the products that are prepared from the Rita's Mixes. *(Id.,* ¶ 26) In addition to the royalty fee, the defendants agreed to pay Rita's on a monthly basis six and one-half percent (6.5%) of the gross sales of all Additional Products, as defined and described by the Franchise Agreement (the "Gross Sales"), sold at the Rita's Shop in the preceding month. *(Id.,* ¶ 27)

       The term of the Franchise Agreement was for ten (10) years and set to expire at the end of the ten-year term unless the Defendants elected to renew the Franchise Agreement

pursuant to the applicable terms and conditions of renewal. (*Id.*, ¶ 24)   Rita's may, at its option,

terminate the Franchise Agreement without opportunity to cure if the defendants at any time

cease to operate or otherwise abandon the Rita's Shop. (*Id.*, ¶ 28)

Upon termination, the defendants shall, *inter alia*: (1) immediately and

permanently cease to use, in any manner whatsoever, any confidential methods, procedures, and

techniques associated with the System and distinctive forms, slogans, signs, symbols, and

devices associated with the System; (2) cancel any assumed name registration or equivalent

registration obtained by Franchisee which contains the Proprietary Marks, any other service

mark or trademark of Rita's or its affiliates, and shall furnish Rita's with evidence satisfactory to

Rita's of compliance with this obligation within ten (10) days after termination or expiration of

the Franchise Agreement; and (3) assign to Rita's or its designee any interest which defendants

have in any lease or sublease for the premises of the Franchised Business or, in the event Rita's

does not elect to exercise this option, defendants shall make such modifications or alterations to

the premises (including, without limitation, the changing of, and the assigning to Rita's of any

telephone number(s) and telephone listing(s), immediately upon termination or expiration of the

Franchise Agreement as may be necessary to distinguish the appearance of the premises from

that of the Franchised Business under the System. (*Id.*, ¶ 29)

Further upon termination, the defendants shall immediately deliver to Rita's the

Manual, all copies, summaries, and extracts from it, and all other records, correspondence,

newsletters, advertising layouts and instructions containing Confidential Information relating to

the operation of the Franchised Business. (*Id.*, ¶ 33)  Further upon termination, Rita's has the

option, to be exercised within thirty (30) days after termination or expiration, to purchase from

the defendants, inter alia, Rita's equipment related to the operation of the Franchised Business at

fair market value or at Franchisee's depreciated book value, whichever is less. (*Id.*, ¶ 33)

The Franchise Agreement provides that upon termination, the defendants shall

comply with the following post-term, non-competition covenant (the "Non-Compete Clause"):

> 17.3   Post Term Covenants. Franchisee covenants that, except as otherwise approved in writing by the Company, Franchisee shall not, for a continuous uninterrupted period commencing upon the expiration or termination of this Agreement, regardless of the cause for termination, and continuing for two (2) years thereafter, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation or limited liability company, own, maintain, operate, engage in, act as a consultant for, perform services for, or have any interest in any retail business which: (a)(i) is the same as, or substantially similar to, a Rita's shop; (ii) offers to sell or sells any product or products which are the same as, or substantially similar to, any of the Proprietary Products; or (iii) offers to sell or sells any product or products which are the same as, or substantially similar to, any of the products offered by a Rita's shop where the sale of such products constitutes or is intended to constitute twenty percent (20%) or more of the gross sales of the business operated or intended to be operated; and (b) is, or is intended to be, located at or within:
>
> 17.3.1   Franchisee's Territory;
>
> 17.3.2   Three (3) miles of Franchisee's Territory; or
>
> 17.3.3   Three (3) miles of any Rita's shop operating under the System and the Proprietary Marks.

(*Id.*, ¶ 34)  The "Franchisee Territory" is defined as a two and one-half (2.5) mile radius of the

Athens Store.  (*Id.*, ¶ 35)  The defendants agreed and acknowledged that their violation of the

Non-Compete Clause would result in irreparable injury to Rita's for which no adequate remedy

at law may be available and they accordingly consented to the issuance of an injunction

prohibiting any conduct in violation of the terms of the Non-Compete Clause.  (*Id.*, ¶ 36)

Defendants expressly agreed that the existence of any claims that they may have against Rita's, whether or not arising from the Franchise Agreement, shall not constitute a defense to the enforcement by Rita's of the covenants in paragraph 17 of the Franchise Agreement. (*Id.*, ¶ 37)

The parties agreed that the Franchise Agreement shall be interpreted and construed under the laws of the Commonwealth of Pennsylvania and expressly agreed to jurisdiction and venue in the United States District Court for the Eastern District of Pennsylvania. (*Id.*, ¶ 39)

Additionally, during the course of the Franchise Agreement, on August 20, 2010, the defendants were granted the right to operate a "Rita's Cart" at the Athens Store. (*Id.*, ¶ 40) The Rita's Cart is a special, free-standing cart that is decorated to meet Rita's specifications, including Proprietary Marks, and design, and which features a limited, approved menu utilizing Rita's formulas and methods for preparing Italian ice and other approved food products pursuant to unique and original formulas, trade secrets, quality standards and specifications.

**B.     Defendants' Default and Breach of the Franchise Agreement**

Without providing notice to, or obtaining the consent of Rita's, on July 19, 2010 defendants unilaterally and prematurely ceased operations of Rita's Shop at the Athens Store seven years prior to the expiration of the ten-year term. (*Id.*, ¶ 41)  Accordingly, on July 20, 2010, Rita's notified the defendants that it was exercising its right to terminate the Franchise Agreement pursuant to section 15.2.3 of the Franchise Agreement, which provides that Rita's may terminate the Franchise Agreement without opportunity to cure if the defendants at any time cease to operate or otherwise abandon the Rita's Shop. (*Id.*, ¶ 42)

Shortly thereafter, Rita's learned that the defendants intended to operate a similar business at the Athens Store under the name Pearly's Sweet Creative Desserts. (*Id.*, ¶ 43)

PHDATA 3320732_1

Therefore, on July 27, 2010, Rita's sent a letter to the defendants reminding them of the confidentiality and non-competition covenants to which they agreed to be bound under the Franchise Agreement and advising the defendants that, should they fail to comply with the covenants, Rita's will enforce the covenants by exercising its legal rights, including seeking injunctive relief. (*Id.*, ¶ 44) Rita's further notified the defendants of its intent to exercise its right under paragraphs 16.8 and 16.9 of the Franchise Agreement, entitling Rita's to purchase from defendants its proprietary "batch machine" parts for the sum of $100. (*Id.*) In furtherance of exercising that right, Rita's demanded that defendants immediately return to Rita's the "dasher" and "door" of their batch machine(s), in exchange for which Rita's would send to defendants a check for $100 per machine. (*Id.*)

Despite receipt of the July 27, 2010 letter and having full knowledge of their obligations under the Non-Compete Clause and obligation not to use Rita's Confidential Information, the defendants began operating a competing business at the Athens Store called Pearly's Sweet Creative Desserts. (*Id.*, ¶ 45) Accordingly, Rita's sent a second letter to defendants on August 5, 2010 advising that Rita's has learned that defendants began operating the Pearly's Store and demanding that defendants cease that operation because it is in violation of section 17.3 of the Franchise Agreement. (*Id.*)

Defendants have been and are continuing to produce, market and sell food items that are the same or substantially similar to the food items that are sold by Rita's franchise stores, including but not limited to soft serve ice cream, Italian water ice, custard, and treats that are a combination of water ice and custard. (*Id.*, ¶ 46)

On August 19, 2010, Rita's sent defendants a letter again advising defendants of its exercise of the option to purchase the batch machine parts and further advising of its exercise

of the option to purchase the Rita's Cart pursuant to paragraph 16.9 of the Franchise Agreement.

A true and correct copy of the August 19, 2010 letter from Rita's to defendants is attached hereto

as Exhibit "G." (*Id.*, ¶ 47)

Defendants have failed to deliver to Rita's the Manual and all copies, summaries,

and extracts from it, and all other records, correspondence, newsletters, advertising layouts and

instructions containing Confidential Information relating to the operation of the Franchised

Business. (*Id.*, ¶ 48) Defendants have also failed to modify or alter the Athens Store premises,

including changing and assigning to Rita's the telephone number(s) and telephone listing(s), as

would be necessary to distinguish the appearance of the premises from that of the Franchised

Business under the System. (*Id.*, ¶ 49)   Defendants have failed to deliver to Rita's the "dasher"

and "door" of the proprietary Rita's batch machine. (*Id.*, ¶ 50)   Finally, defendants have failed

to deliver or surrender the Rita's Cart.

## III.   STANDARD

### A.   TEMPORARY RESTRAINING ORDER.

Rule 65(b) of the Federal Rules of Civil Procedure provides that a temporary

restraining order may be granted without written or oral notice to the adverse party or that party's

attorney if (1) it clearly appears from specific facts that immediate and irreparable injury, loss, or

damage will result to the applicant before the adverse party or that party's attorney can be heard

in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any,

which have been made to give the notice and the reasons supporting the claim that notice should

not be required. Plaintiff has attempted to give notice of this Motion to defendants by delivering

a copy of the Complaint and this Motion to defendants' Philadelphia-based attorney via email

and by contacting counsel via telephone to advise that this Motion is being filed today. (See

PHDATA 3320732_1

Declaration of Erin L. Ginsberg, ¶¶ 6-8, attached hereto as Exhibit "A") For the reasons that follow, should counsel for Defendants fail to appear to be heard in opposition to this Motion, irreparable harm will result to Plaintiffs before the Defendants or their attorney(s) can be heard, thus necessitating a Temporary Restraining Order.

### B.   INJUNCTIVE RELIEF.

A party is entitled to a preliminary injunction if it can establish (1) a reasonable probability of success on the merits; (2) that it will suffer irreparable harm if relief is not granted; (3) that a preliminary injunction will not result in even greater harm to the other party; and (4) that a preliminary injunction is in the public interest. *See Sys. Operations, Inc., and Mathematical, Inc. v. Scientific Games Dev. Corp.*, 555 F.2d 1131, 1141 (3d Cir. 1977).

## IV.   ARGUMENT

### A.   PLAINTIFFS ARE LIKELY TO PREVAIL ON THE MERITS OF THEIR CLAIM.

Section 17.3 of the Franchise Agreement (the "Non-Compete Clause") prohibits the defendants from operating any retail business which is the same or substantially similar to Rita's at the Athens Store, within the Franchisee Territory, and within a three-mile radius of the Athens Store for two years following the termination of the Franchise Agreement. Notwithstanding the termination of the Franchise Agreement on July 28, 2010, defendants have continued to operate a frozen treats business, under a different name, including the sale of water ice and ice cream, at the Athens Store, in violation of the Non-Compete Clause. Accordingly, this Court should enter a temporary restraining order and subsequent Preliminary Injunction enjoining the defendants' continuing violations of the Non-Compete Clause pending final adjudication of the merits of this matter.

PHDATA 3320732_1

Under well-settled Pennsylvania law, a covenant not to compete will be enforceable if it is (1) "ancillary to the main purpose of a lawful transaction; (2) necessary to protect a party's legitimate interest; (3) supported by consideration; and (4) appropriately limited as to time and territory." *Volunteer Firemen's Ins. Servs. v. Cigna Prop. & Cas. Ins. Agency*, 693 A.2d 1330, 1337 (Pa. Super. Ct. 1997); *see also Athlete's Foot Mktg. Assocs. v. Zell Inv., Inc.* ("Athlete's Foot"), No. 00-186, 2000 U.S. Dist. LEXIS 22906 (W.D. Pa. Feb. 17, 2000); *Rita's Water Ice Franchise Corp. v. DBI Inv. Corp.* ("Rita's Water Ice"), No. 96-306, 1996 U.S. Dist. LEXIS 4551, *8 (E.D. Pa. Apr. 8, 1995); *Piercing Pagoda, Inc. v. Hoffner* ("Piercing Pagoda"), 351 A.2d 207, 210 (Pa. 1976). "A restrictive covenant contained in a franchise agreement meets these standards, and injunctive relief is appropriate for the enforcement of such a covenant." *Athlete's Foot* at *23.

1.     **The Non-Compete Clause is ancillary to the main purpose of the Franchise Agreement.**

Courts have routinely recognized that a covenant not to compete is ancillary to the main purpose of the franchise agreement, which is to allow a franchisee to use the franchisor's marks and business methods, in exchange for the right to operate a franchise and/or the payment of royalties. *See Athlete's Foot* at *23 (holding that a covenant not to compete was ancillary to the main purpose of a franchise agreement); *Novus Franchising, Inc. v. Taylor* ("Novus Franchising"), 795 F. Supp. 122, 129 (M.D. Pa. 1992) (same). The main purpose of the Franchise Agreement was to allow the defendants to operate a Rita's franchise (Compl. ¶ 20) in exchange for, among other things, royalty payments and payment of a percentage of gross sales. (Compl. ¶¶ 26, 27)  The Non-Compete Clause contained in the Franchise Agreement is wholly ancillary to that purpose.  The purpose of the Non-Compete Clause is, *inter alia*, to protect Rita's legitimate business interests, as more fully set forth below.

PHDATA 3320732_1

2.    **The Non-Compete Clause is necessary to protect Rita's legitimate interests.**

Covenants not to compete in franchise agreements protect a franchisor's legitimate interest in those agreements, including but not limited to their name, markets and methods of operation. *See Athlete's Foot* at \*23 ("existing franchise itself is a legitimate business interest protectable by a covenant not-to-compete"); *Rita's Water Ice* at \*8 ("franchisor has a protectable interest in the sale of a franchise because of expenditures made by a franchisor for market development and training, the grant of an exclusive sales area, and permission to use franchisor's name"); *Novus Franchising* at 127-8 (same); *Piercing Pagoda* at 211 ("existing franchise itself is a legitimate business interest and therefore protectable" through a covenant not-to-compete).

Rita's has expended the necessary funds to develop, market and promote its marks as well as to develop proprietary methods of business operations, including the Confidential Information. Pursuant to the Franchise Agreement, Rita's conditionally authorized the defendants to make use of, among other things, its Confidential Information and its marks. Accordingly, Rita's, as embodied by the Franchise Agreement, has a legitimate interest to be protected by the Non-Compete Clause.

3.    **The Non-Compete Clause is supported by consideration.**

Courts have consistently held that covenants not to compete in franchise agreements are supported by consideration; that is, the grant of the franchise *itself. See Athlete's Foot* at \*23-24 ("fact that the covenant-not-to-compete at issue here was entered into as a condition of the franchise relationship is, in and of itself, adequate consideration to support the covenant"); *Rita's Water Ice* at \*8-9 (same). In the present case, there is adequate consideration

supporting the Non-Compete Clause because it was a condition to Rita's grant of a franchise to the defendants.

**4.      The Non-Compete Clause is appropriately limited as to time and territory.**

Covenants not to compete found in franchise agreements provide the franchisor with "an opportunity to establish a new franchise in the area while there is still customer loyalty and brand name recognition in place." *Athlete's Foot* at *25-26; *see also Novus Franchising* at 128.

Here, the two-year period provided for in the Non-Compete Clause, which allows Rita's to refranchise the area served by defendants, is within the time period that courts have consistently held to be appropriate. *See Novus Franchising* at 128 (upholding two-year covenant); *Athlete's Foot* at *25-26 (one-year covenant found reasonable); *Maaco Enters. v. Bremmer* ("Maaco Enters."), No. 98-CV-2727, 1998 U.S. Dist. LEXIS 15174, *11 (E.D. Pa. Sept. 29, 1998) (same); *Rita's Water Ice* at *9 (18 month covenant found appropriate); *Sparks Tune-Up, Inc. v. White* ("Sparks Tune-Up"), No. 89-664, 1989 U.S. Dist. LEXIS 4216, *7 (E.D. Pa. Apr. 18, 1989) (finding one-year covenant reasonable).

Moreover, the limited geographic scope of the Non-Compete Clause — the Franchisee Territory and a three-mile radius of that territory and of any Rita's shop — is appropriate. *See Athelete's Foot* at*26 (holding that a five-mile covenant was reasonable); *Maaco Enters.* at*11 (finding ten-mile covenant reasonable); *Novus Franchising* at 129 (finding covenant "limited to franchisee's former territory" reasonable); *Sparks Tune-Up* at *7 (finding a ten-mile covenant reasonable); *see also Jackson Hewitt Inc. v. Childress*, No. 06-CV-0909, 2008 U.S. Dist. LEXIS 24460 (D.N.J. Mar. 21, 2008) (enforcing ten-mile covenant).

PHDATA 3320732_1

**B.**   **INJUNCTIVE RELIEF IS NECESSARY DUE TO THE IRREPARABLE HARM THAT RITA'S IS SUFFERING AND WILL CONTINUE TO SUFFER IF THE REQUESTED RELIEF IS NOT GRANTED.**

It is *de facto* the case that "[i]rreparable injury results when a former franchisee competes against a franchisor in breach of a restrictive covenant contained in the parties' franchise agreement." *Athlete's Foot* at *27; *see also Novus Franchising*, 795 F. Supp. 130-131; *Maaco Enters.*, 1998 U.S. Dist. LEXIS 15174, *12; *Rita's Water Ice*, 1996 U.S. Dist. LEXIS 4551, *10; *Sparks Tune-Up*, 1989 U.S. Dist. LEXIS 4216, *8.

In the present case, Rita's has been, and will continue to be, irreparably harmed by the defendants' continuous violations of the Non-Compete Clause, because the defendants, possessing and using Rita's Confidential Information, will deliberately continue to interfere with Rita's ability to secure other franchisees to service the territory previously served by the defendants' Franchised Business, thereby eliminating Rita's competitive advantage and business in the area in and surrounding the Franchisee Territory. *See Athlete's Foot* at *28 (holding that the franchisor's ability to establish a new franchise in the market was being "immeasurably impaired by [former franchisees'] continues operation of its [s]tores"). "The consequences of this disturbance with customer relationships is [*sic*] unascertainable and not capable of being fully compensated by money damages." *Athlete's Foot* at *28; *see also Novus Franchising* at 130. Rita's provided defendants with Confidential Information and trained defendants in the methods and manner of operating a Rita's shop, and in the course of operating a shop that sells the same and substantially similar food items as are sold by Rita's shops, defendants are necessarily using that knowledge to their benefit and to Rita's competitive disadvantage.

In addition to the irreparable harm described above, courts have also recognized the irreparable harm that could be suffered by franchisors if franchisees are allowed to violate

covenants not to compete, such as a potential "domino effect" of franchisees establishing competing businesses, and the reduction in value of the franchise as a whole. *See Athlete's Foot* at *28-29; *see also Rita's Water Ice* at *10 (observing that "[i]f [franchisor] is unable to enforce this restrictive covenant against these defendants, the values of all its franchises are lowered. Other franchisees might violate their franchise agreements in similar ways and use [franchisor's] goodwill to establish competing businesses."). Accordingly, Rita's will suffer irreparable harm unless the Defendants are enjoined from competing with Rita's in violation of the Non-Compete Clause.

Finally, defendants themselves acknowledged and agreed that their violation of the Non-Compete Clause would result in irreparable injury to Rita's for which no adequate remedy at law may be available. (Compl. ¶ 36; Compl. Ex A, ¶ 17.8) Defendants accordingly *consented* to the issuance of an injunction prohibiting any conduct in violation of the terms of the Non-Compete Clause. (*Id.*)

### C.   A PRELIMINARY INJUNCTION WILL NOT RESULT IN EVEN GREATER HARM TO DEFENDANTS.

Any harm suffered by the defendants is not cognizable in this case, because the defendants brought the harm upon themselves through their continuous and deliberate breach of the Franchise Agreement. *See, e.g., Jiffy Lube*, 968 F.2d 371, 379 (recognizing that a party cannot complain of harm where its own actions caused the harm); *see also Athlete's Foot* at *30; *and Rita's Water Ice* at *12. The defendants contractually agreed to operate a Rita's shop at the Athens Store for a term of ten years. They unilaterally and prematurely ceased operation of that franchise, in breach of the Franchise Agreement, and chose to commence a competitive operation. They have no grounds to complain that they will be harmed if forced to cease

17                                    PHDATA 3320732_1

operations of a business that they contractually covenanted not to operate, where they would otherwise still be operating a Rita's shop from which they would be deriving revenues.

Furthermore, any harm suffered by defendants in granting injunctive relief would be compensable in monetary damages, and, therefore, would not outweigh the irreparable harm to be suffered by Rita's in not granting the requested relief. *See, e.g., Dunkin Donuts, Inc. v. Liu*, Nos. 99-3344 and 00-3666, 2000 U.S. Dist. LEXIS 18388, *15 (E.D. Pa. Dec. 21, 2000) (holding that any harm from cessation of operations of franchise would be remediable by money damages).

Finally, defendants expressly agreed that the existence of any claims that they may have against Rita's, whether or not arising from the Franchise Agreement, shall not constitute a defense to the enforcement by Rita's of the Non-Compete Clause. (Compl. ¶ 37; Compl. Ex. A, ¶ 17.7)

### D.    A PRELIMINARY INJUNCTION IS IN THE PUBLIC INTEREST.

"The public interest supports contractual enforcement by preventing competition in violation of a valid restrictive covenant." *Rita's Water Ice* at *12; *accord Athlete's Foot* at *32; *see also Novus Franchising* at 132 (enforcing covenant not to compete in franchise agreement to protect public interest in goodwill of franchisors). Equally, in the present case, the public interest supports enforcing the Non-Compete Clause of the Franchise Agreement, which is a valid restrictive covenant.

V.     **CONCLUSION**

For the foregoing reasons, Plaintiff Rita's Water Ice Franchise Company, LLC respectfully request that this Court grant Plaintiffs' Motion for a Temporary Restraining Order and subsequent Preliminary Injunction in the proposed form of Orders provided, and grant such other relief as this Court deems appropriate.

Respectfully submitted,

/s/ Erin L. Ginsberg
Erin L. Ginsberg (I.D. No. 89864)
eginsberg@schnader.com
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market St., Ste. 3600
Philadelphia, PA 19103
T: (215) 751-2000

*Attorney for Plaintiffs*

Dated: August 24, 2010

PHDATA 3320732_1

# Exhibit "A"

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| RITA'S WATER ICE FRANCHISE COMPANY, LLC, | : |
| Plaintiff, | : : : |
| v. | : : |
| SA SMITH ENTERPRISES, LLC, SHIRLEY A. SMITH, and JEFFREY B. SMITH | : : : : |
| Defendants. | : : |

CIVIL ACTION NO. _____

**DECLARATION OF ERIN L. GINSBERG**
**IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER**

I, Erin L. Ginsberg, being first duly sworn on oath, declare and state as follows:

1.     I am an attorney at the law firm of Schnader Harrison Segal & Lewis LLP.  I represent plaintiff Rita's Water Ice Franchise Company, LLC ("Rita's").

2.     Today I will be initiating an action on behalf of Rita's, styled in the manner captioned above, by filing a verified Complaint.  I will also file an Emergency Motion for Temporary Restraining Order and Preliminary Injunction.  I make this declaration pursuant to Fed. R. Civ. Pro. 65(b)(1)(B), which provides that a temporary restraining order may issue without written or oral notice to the adverse party if the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

3.     The subject of the action being initiated today is the defendants' default and breach, and Rita's subsequent termination of, a franchise agreement by and between Rita's and defendants (the "Franchise Agreement").

4.     Following Rita's notice of termination of the Franchise Agreement, Sharmil Mckee, Esquire sent a letter to Rita's wherein she stated that she and her office represent defendant SA Smith Enterprises, LLC in the matter of the termination of the Franchise Agreement by and between Rita's and defendants.

5.     Ms. McKee continued to correspond on behalf of the defendants with counsel for Rita's in furtherance of Rita's efforts to settle this matter without the necessity of litigation, to no avail.

6.     Today I sent an email to Ms. McKee to which I attached the Complaint and TRO and by which I advised Ms. McKee of my intention to file the Complaint and TRO within the hour and to immediately seek a temporary restraining order.  I also called Ms. McKee to advise her of same.

7.     In addition, throughout the settlement discussions, counsel for Rita's advised that Rita's would be  proceeding with a request for injunctive relief if defendants would not agree to an amicable resolution.

8.     Accordingly, Rita's has made its intention of seeking injunctive relief clear to defendants and Rita's counsel has given Ms. McKee notice of today's filing such that she or a member of her firm could appear before the court today to oppose Rita's request for a TRO.

9.     For these reasons, I respectfully submit that in the event that counsel for defendants does not take advantage of having been notified of today's proceeding and declines to appear before this court to oppose Rita's Motion for TRO, the verified Complaint clearly shows that Rita's will suffer such irreparable harm that a TRO should issue before defendants can be heard in opposition.

PHDATA 3322919_1

10.   I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 24th day of August 2010 in Philadelphia, Pennsylvania.

Erin L. Ginsberg

PHDATA 3322919_1